J-S17003-17

2018 PA Super 1

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| DERRICK EDWARDS | |
| Appellant | No. 436 EDA 2015 |

Appeal from the Judgment of Sentence imposed January 9, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at Nos: CP-51-CR-0002611-2013; CP-51-CR-0002614-2013; CP-51-CR-0002617-2013; CP-51-CR-0002815-2013; CP-51-CR-0002820-2013; CP-51-CR-0002853-2013; CP-51-CR-0002862-2013; CP-51-CR-0002864-2013

BEFORE:  OLSON, STABILE, and MUSMANNO, JJ.

DISSENTING OPINION BY STABILE, J.          **FILED JANUARY 02, 2018**

The Majority concludes the Commonwealth's peremptory strike of Juror 67 was racially motivated and violated **Batson**.[1]  Consequently, the Majority would vacate Appellant's judgment of sentence and remand for a new trial. Because I disagree with the learned Majority's analysis of the **Batson** test, its rejection of the trial court's factual determinations, and find other of our precedent persuasive, I respectfully dissent.[2]

---

[1] **Batson v. Kentucky**, 476 U.S. 79 (1986).

[2] The Majority explained that it addressed only three of the issues raised by Appellant and, because it found a **Batson** violation warranting a new trial,

In ***Commonwealth v. Harris***, 817 A.2d 1033 (Pa. 2002), our Supreme

Court recognized:

> ***Batson*** set forth a three-part test for examining a criminal defendant's claim that a prosecutor exercised peremptory challenges in a racially discriminatory manner: first, the defendant must make a *prima facie* showing that the circumstances give rise to an inference that the prosecutor struck one or more prospective jurors on account of race; second, if the *prima facie* showing is made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the juror(s) at issue; and third, the trial court must then make the ultimate determination of whether the defense has carried its burden of proving purposeful discrimination.

***Id.*** at 1042 (citations omitted).[3]

In the context of peremptory challenges, Pennsylvania law further requires the defendant, in his or her prima facie case, to make a record specifically identifying a) the race or gender of all venirepersons in the jury pools, b) the race or gender of all venirepersons remaining after challenges for cause, c) the race or gender of those removed by the prosecutor, and d)

_____

declined to address the remaining issues.  Majority Opinion at 6 n. 11. Because the Majority vacates the judgment of sentence and remands for a new trial based on ***Batson***, I likewise decline to address Appellant's remaining issues and express no opinion as to the merit of those issues.

[3] ***Harris*** is one of the few cases since 2000 in which our Supreme Court considered a ***Batson*** challenge on direct appeal.  Others include ***Commonwealth v. Towles***, 106 A.3d 591 (Pa. 2014), involving challenges based on race and gender, and ***Commonwealth v. Sanchez***, 36 A.3d 24 (Pa. 2011), which will be discussed *infra*.  The vast majority of the ***Batson*** cases decided by our Supreme Court in recent years involved appeals from the denial of a PCRA petition. ***See, e.g., Commonwealth v. Watkins***, 108 A.3d 692 (Pa. 2014) (Majority Opinion at 10); ***Commonwealth v. Roney***, 79 A.3d 595 (Pa. 2013), *infra*.

the race or gender of the jurors who served and the race or gender of jurors acceptable to the Commonwealth who were stricken by the defense. **Commonwealth v. Hill**, 727 A.2d 578, 582 (Pa. Super. 1999) (citing **Commonwealth v. Spence**, 627 A.2d 1176 (Pa. 1993)). After such a record is established, the trial court must consider the totality of the circumstances to determine whether the defendant has made a prima facie case of purposeful discrimination. **Id.** (citing **Commonwealth v. Thomas**, 717 A.2d 468, 475 (1998) and **Commonwealth v. Rico**, 711 A.2d 990 (1998)).

In conducting its analysis, the Majority expressed its agreement with the trial court that Appellant satisfied the first prong of **Batson** by "establish[ing] a *prima facie* case of purposeful discrimination." Majority Opinion at 13. However, my review reveals that the trial court did not make any such determination either on the record or in its Rule 1925(a) opinion.

During voir dire proceedings, out of the presence of the jury, Appellant's counsel indicated he was "questioning" four strikes made by the prosecution. Notes of Testimony ("N.T."), Voir Dire Proceedings, 10/28/14, at 88. Discussion first centered on the fact the court crier listed the race and gender of potential jurors on the strike list. The trial court then stated:

> **Trial Court:** I'm trying to make a record here. And is number—are these jurors all white jurors?
>
> **Appellant's Counsel:** They are all African American jurors.
>
> **Trial Court:** These jurors are all African American jurors.

- 3 -

*Id.* at 92-93. The trial court proceeded to inquire into the strikes and found them to be race neutral. Defense counsel did nothing to establish a proper and complete record on the *prima facie* prong of the **Batson** test and the additional *prima facie* criteria required under Pennsylvania law. Likewise, other than setting out the three-pronged test in its Rule 1925(a) opinion, the trial court did not discuss the *prima facie* showing prong of **Batson**, instead commenting, "While counsel for Appellant challenged the Commonwealth's striking of four African-American venirepersons, this [c]ourt inquired into the strikes and found them to be race-neutral." Trial Court Rule 1925(a) Opinion, 2/24/16, at 18-19. I find no support in the record for the Majority's statement that the trial court determined Appellant satisfied the first prong of **Batson**.[4] As this Court explained in **Commonwealth. v. Thompson**, 106 A.3d 742 (Pa. Super. 2014):

> The requirements for a *prima facie* **Batson** showing are well settled.
>
>> Generally, in order . . . to satisfy the first requirement of demonstrating a *prima facie* **Batson** claim, the movant must establish that he or she is a member of a cognizable racial group, that the opposing party exercised peremptory challenges to remove from the venire members of his or her race, and that other relevant circumstances combine to raise an inference that the opposing party removed the jurors for racial reasons. Whether the movant has carried

---

[4] I do find some inconsistency in the Majority concluding Appellant established a *prima facie* case of purposeful discrimination as evidenced by the trial court's words and actions, Majority Opinion at 14, while at the same time dismissing the trial court's words and actions wherein it found no discriminatory intent under the third prong of **Batson**. **See, infra.**

- 4 -

this threshold burden of establishing a *prima facie* case should be determined in light of all the relevant circumstances.

*Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1142 (2009).

A showing that a number of strikes were used against venirepersons of one race will not, without more, create the inference necessary to establish a *prima facie* **Batson** claim. Rather, our Supreme Court has continually recognized that a moving party must preserve a "full and complete record of the asserted **Batson** violation, as it would otherwise be impossible to conduct meaningful appellate review of the motivations of prosecutors in individual cases without such a record." *Commonwealth v. Fletcher*, 580 Pa. 403, 861 A.2d 898, 909 (2004) (citation omitted), *cert. denied*, **Fletcher v. Pennsylvania**, 547 U.S. 1041, 126 S.Ct. 1617, 164 L.Ed.2d 336 (2006). "This full and complete record requirement necessitates that the movant make a record identifying the race of venirepersons stricken by the Commonwealth, the race of prospective jurors acceptable to the Commonwealth but stricken by the defense, and the racial composition of the final jury." **Id.** at 910 (citation, footnote, and internal quotation marks omitted). When a movant fails to make such a record, we cannot review the trial court's determination that a movant failed to establish a *prima facie* case under **Batson**. **Id.** at 909–910, *citing* **Commonwealth v. Holloway**, 559 Pa. 258, 739 A.2d 1039 (1999).

**Id.** at 751-52 (some quotations, citations and brackets omitted). **See also Hill, supra.**

With respect to **Fletcher's** "full and complete record" requirement as detailed in **Hill**, it is only because the court clerk recorded the race of the venirepersons on the Strike List that there was any record of the race and gender of the jury pool, of those remaining, of those stricken by the Commonwealth, of jurors who served, and of those acceptable to the

Commonwealth who were stricken by the defense. Strike List, 10/28/14. Clearly, Appellant did not make the required record. Further, the trial court did not make any determination that Appellant established a *prima facie* showing to satisfy the first prong of **Batson**. Therefore, there is no determination for this Court to review concerning the first prong.

Regardless, the trial court's failure to consider the *prima facie* showing prong of the **Batson** test does not present an impediment to this Court's review under **Batson**. Our Supreme Court addressed a similar situation in **Sanchez**, where the trial court likewise did not address the first prong of the **Batson** test either in court or in its Rule 1925(a) opinion, instead focusing on the second prong, *i.e.*, whether the Commonwealth's explanation of its peremptory strike was race-neutral. Although the Commonwealth challenged the finding of a *prima facie* showing in **Sanchez**, the Supreme Court announced it would not decide the issue of whether the appellant met his *prima facie* burden. Citing **Harris** and **Commonwealth v. Edwards**, 903 A.2d 1139, 1154 n. 16 (Pa. 2006), the Court recognized that the United States Supreme Court has suggested that, under these circumstances, "we may turn directly 'to the question of whether the appellant had carried his burden of proving that the prosecution had struck the juror based on race.'" **Sanchez**, 36 A.3d at 45 (quoting **Edwards**, 903 A.2d at 1154 n. 16, in turn quoting **Hernandez v. New York**, 500 U.S. 352, 359 (1991) (plurality)). The

*Sanchez* Court proceeded to consider the second and third prongs of the test. I likewise shall proceed to the second and third prongs.

The second prong of the *Batson* test requires the prosecution to articulate a race-neutral explanation for striking the jurors. *See Harris*, 817 A.2d at 1043. I agree with the Majority's analysis and conclusion that the Commonwealth did proffer race-neutral explanations for striking the four venirepersons in question. *See* Majority Opinion at 15-16. As our Supreme Court explained in *Harris*, at issue is the facial validity of the prosecutor's explanation and, absent inherent discriminatory intent in the explanation, the reasons offered will be deemed race neutral. *Harris*, 817 A.2d at 1043. The trial court accepted the prosecutor's explanations as race neutral. The Majority agrees and I concur in that conclusion.

The third prong of *Batson* requires that the trial court determine whether the defense has carried its burden of proving the Commonwealth engaged in purposeful discrimination. *See Harris*, 817 A.2d at 1042. It is well established that the evaluation of a prosecutor's intent for striking a juror is a credibility matter that lies "peculiarly within the trial judge's province." *Hernandez*, 500 U.S. at 365 (citations omitted). Indeed, the Majority acknowledged:

> [A] trial court's decision on the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal and will not be overturned unless clearly erroneous. Such great deference is necessary because a reviewing court, which analyzes only the transcripts from *voir dire*, is not as well positioned as the trial court is to make credibility

determinations. Moreover, there will seldom be much evidence on the decisive question of whether the race-neutral explanation for a peremptory challenge should be believed; the best evidence often will be the demeanor of the prosecutor who exercises the challenge.

Majority Opinion at 17 (quoting **Commonwealth v. Williams**, 980 A.2d 510, 531 (Pa. 2009) (internal quotation marks and citations omitted)). As our Supreme Court observed, "Such great deference is appropriate and warranted because the trial court, having viewed the demeanor and heard the tone of voice of the attorney exercising the challenge, is uniquely positioned to make credibility determinations." **Roney**, 79 A.3d at 619 (citing **Williams**, 980 A.2d at 531). **See also Foster v. Chatman**, 136 S.Ct. 1737, 1747 (2016) (quoting **Snyder v. Louisiana**, 552 U.S. 472, 477 (2008) ("in absence of exceptional circumstances, 'we defer to state court factual findings unless we conclude they are clearly erroneous.'")); **Hernandez**, 500 U.S. at 366 ("in the absence of exceptional circumstances, we [should] defer to the [trial court's] factual findings.").

Despite such clear directives, the Majority does not do justice to the above standards. Indeed, the Majority ignores the deference owed to the trial court's decision on discriminatory intent and instead makes its own *findings* based on a cold record, reweighing the relevant circumstances to overturn the trial court's finding regarding Juror 67.

Contrary to the trial judge who observed the voir dire process, the Majority determined that three factors were strongly indicative of the

prosecution's discriminatory intent: first, potential jurors were identified by race and gender on the peremptory strike sheet [("Strike Sheet")]; second, statistics established that the Commonwealth struck a disproportionate number of African Americans; and third, the Commonwealth's explanation for striking Juror 67 was "wholly unpersuasive." Majority Opinion at 19. With due respect, I find this to be error by the Majority.

Regarding the peremptory Strike Sheet, it is undisputed it provided the race and gender of potential jurors. However, the Majority overlooks—or at the very least, minimizes—the fact that the Commonwealth had no involvement in the preparation of the Strike Sheet or placement of any notations regarding race or gender. Indeed, it is clear, and acknowledged by the Majority, that the notations are attributable solely to the trial court. *Id.* at 4. I do not understand how the Majority can impute discriminatory intent to the Commonwealth from the content of this document when the Commonwealth had no say or involvement in its drafting. Further, while the Majority finds the trial court's practice of notating the race and gender on the Strike Sheet ill-advised and inappropriate, but acknowledges that the inclusion of race and gender on the sheet is not discriminatory *per se*, **id.** at 12-13, the Majority fails to explain how—or even **if**—the Commonwealth misused the information. I too fail to see how this information was misused, or for that matter ill-advised, especially when Appellant was required to include this information in the record as a part of his *prima facia* showing, and this

information discloses no more than what plainly can be observed of the venire panel during jury selection. As previously stated, had it not been for the trial court's notations on the Strike Sheet, the *prima facia* information required under **Hill** would be completely absent from the record in this case. Respectfully, I find the Majority's designation of the Strike Sheet as indicative of discriminatory intent as unfounded.

Regarding the second ground, the Majority offers statistics to establish that the Commonwealth struck a disproportionate number of African Americans. As the Majority acknowledged, statistics alone are not dispositive of the matter.

> As our Supreme Court recognized in **Roney**,
>
> [The] citation of statistics does not prove purposeful discrimination in jury selection cases. In [**Commonwealth v. Ligons**, 971 A.2d 1125, 1244 (Pa. 2009)], we held as follows: "While it is clear that the prosecutor peremptorily struck more African-Americans than Caucasians, this fact, in and of itself, is insufficient to demonstrate purposeful discrimination when considering the totality of the circumstances."

79 A.3d at 622. In its discussion of deference owed to the trial court's decision on discriminatory intent, the Court in **Roney** explained:

> [G]reat deference is appropriate and warranted because the trial court, having viewed the demeanor and heard the tone of voice of the attorney exercising the challenge, is uniquely positioned to make credibility determinations. Although the demeanor of the attorney exercising the peremptory challenge is often the best evidence as to the question of discriminatory intent, the trial court should consider the totality of the circumstances before making its ruling. Other relevant evidence as to the ultimate question of whether the prosecutor exercised purposeful discrimination and acted with discriminatory intent includes the following: the final

- 10 -

composition of the jury, the race or gender sensitivity of the case, and any questionable remarks made by the prosecutor during jury selection. *See Williams, supra* at 532; *Commonwealth v. Ligons*, 601 Pa. 103, 971 A.2d 1125, 1144 (2009); [*Commonwealth v. Cook*, 952 A.2d 594, 608 (Pa. 2008); *Commonwealth v. Spotz*, 896 A.2d 1191, 1212-14 (Pa. 2006)].

*Id.* at 619 (some citations omitted).[5]

The Majority recognized that statistics *alone* are not sufficient to prove discriminatory intent but can be considered in the totality of circumstances to determine whether the Commonwealth exercised its strikes in a discriminatory manner. *Id.* at 20 (citing *Ligons*, 971 A.2d at 1144).[6] Here, the Majority notes that thirty potential jurors were considered by the parties, thirteen of whom were African American, fourteen of whom were Caucasian, and three of whom were "Other," *i.e.*, neither African American nor Caucasian. Majority Opinion at 19-20. Seven of the Commonwealth's peremptory strikes were used on African Americans and one was used on a person considered "Other." The Commonwealth did not strike any Caucasians. *Id.* at 20.

---

[5] While information is available here concerning the final composition of the jury, *see infra*, there is no suggestion in the record of any particular racial sensitivity of the case, nor is there any reference to questionable remarks made by the prosecutor during jury selection.

[6] The Majority certainly will contend that there are two other bases for its conclusions, namely, the Strike Sheet and the explanation for striking Juror 67. In the end, however, the statistical ground is the only one that could conceivably lend support to the Majority's conclusions because it would be improper to penalize the Commonwealth for something it did not do or, as noted below, to substitute our judgment for that of the trial court simply because we do not like the outcome.

The Majority determined, "The statistics in this case are startling. Unlike many cases addressed by our Supreme Court, in this case the Commonwealth exercised all eight of its peremptory strikes on racial minorities and seven of those eight on African-Americans." ***Id.*** The Majority concluded:

> Although the Commonwealth could not completely purge the jury in this case of African-Americans because of the number of African-American members of the venire, the Commonwealth greatly reduced the number of African-Americans on the jury in this case by exercising all of its peremptory strikes and using seven of those eight strikes on African-Americans. These probabilities, combined with the identification of the potential jurors' races and genders on the peremptory strike sheet and the proffered, but highly implausible, race-neutral explanation for striking Juror 67, cause us to conclude that Appellant met his burden in demonstrating that the Commonwealth struck Juror 67 with discriminatory intent.

***Id.*** at 21.

I take issue with the Majority's conclusions on several levels. Most important, as is common, reliance upon statistics can be misleading. Here, the Majority's conclusion that "the probability of striking no Caucasians and striking at least 7 of 13 African-Americans by random chance is extremely small," Majority Opinion at 20, completely omits the reasons for which these potential jurors were stricken, thus leaving a false impression as to why these strikes were exercised. While the Commonwealth did strike seven African Americans, Appellant did not assert ***Batson*** challenges with regard to three of the African Americans or the "Other" venireperson. Appellant used his peremptory strikes on one African American, six Caucasians, and one "Other."

- 12 -

As a result, the jury ultimately empaneled included five African Americans, seven Caucasians, and one "Other." *See* Strike List 10/28/14.

As important, a review of the Strike List reveals that the Commonwealth accepted six of the first eight African Americans on the panel. This is particularly telling and compelling in light of the fact the venirepersons were brought into the courtroom for voir dire in two groups, the first comprised of fifty prospective jurors and the second comprised of forty. After the trial court conducted group voir dire for the first fifty, asking whether the prospective jurors knew any of the parties, witnesses, etc., the trial court reduced that group of fifty to nineteen. N.T., Voir Dire Proceedings, 10/28/14, at 10-18. From that first group of fifty, only the nineteen remaining venirepersons have their race and gender indicated on the Strike List.

Voir dire continued for the nineteen prospective jurors. Of the nineteen, four Caucasians, one African American, and one "Other" are noted as stricken by the trial court, leaving thirteen in that first group. Four of the thirteen were Caucasian, eight were Afircan American, and one was "Other." The Commonwealth struck two African Americans while Appellant struck three Caucasians, one African American, and one "Other." *See* Strike List, 10/28/14, at 1-2 (unnumbered). I note that both the African American and the "Other" stricken by Appellant were acceptable to the Commonwealth. *Id.* The remaining six from the first group who were ultimately seated on the jury included five African Americans and one Caucasian. *Id.* These "statistics"

belie the Majority's suggestion that the Commonwealth was attempting to "purge the jury" (Majority Opinion at 21) of African Americans and highlights once again the impropriety of this Court attempting to substitute its judgment for that of the trial court.

Further, I disagree with the Majority's conclusion that "Appellant met his burden in demonstrating that the Commonwealth struck Juror 67 with discriminatory intent." Majority Opinion at 20. When questioned, the Commonwealth offered the following explanation for striking Juror 67:

> [W]hen she was being questioned by Your Honor, she was leaning back, seemed a little cavalier, had her arm resting on the back and while we were conducting *voir dire* in the back, she was sitting there with her arms crossed and her head kind of nodded, seemed guarded and again as if she didn't want to be here, so I didn't think she would be a fair and competent juror.

N.T., Voir Dire Proceedings, 10/28/14, at 94. The trial judge then stated, "Okay. Those are also neutral reasons for the Commonwealth exercising those strikes. **Batson** challenge is denied." **Id.** Appellant's counsel responded, "Thank you." **Id.** Appellant did not mention Juror 67 in his brief, except in the quoted excerpt from the voir dire proceedings. Appellant further does not present any argument with respect to the race-neutral explanation offered by the Commonwealth regarding Juror 67 and does not present any statistics whatsoever regarding the composition of the venire or the jury empaneled.

As the record reflects, once the Commonwealth disclosed its reasons for striking Juror 67, the trial court did not hesitate to grant the strike. Appellant's counsel did not object and the trial court seemingly did not find it necessary

to add its own explanation on the record for granting the strike. It would appear, therefore, the trial court agreed with the Commonwealth's description of Juror 67's attitude, body language, and demeanor. It is not for this Court to speculate otherwise.

The argument Appellant advances in support of his **Batson** challenge includes testimony quoted from the voir dire proceedings, case law analyzing **Batson**, and a request that this Court view the prosecutor's reasons for striking African American jurors in light of **Foster, supra.**[7] Appellant's Brief at 13-15. In essence, Appellant's entire "argument" consists of one phrase, *i.e.*, that the Commonwealth "systematically attempt[ed] to strike African-American jurors, even the African-Americans with neutral answers on their

_____

[7] I note that **Foster** is distinguishable from Appellant's case in several respects. In **Foster**, the challenge centered on two African-American jurors. The prosecution offered facially race-neutral bases for striking them. However, documents from the prosecution's files revealed that both were on a "Definite NO's" list. The Supreme Court also concluded that reasons offered by the prosecution for striking the two jurors applied as well to otherwise-similar Caucasian panelists who were permitted to serve. Further, the reasons for striking one of the jurors shifted over time. The Court held that the record belied the prosecutor's assertions and found the strikes were motivated in substantial part by discriminatory intent. **Foster**, 136 S.Ct. at 1748-1754. Viewing Appellant's case in light of **Foster**, as he requests, would not provide any basis for disturbing the trial court's determinations regarding the jurors at the center of Appellant's **Batson** challenge, including Juror 67.

Juror Information Questionnaire, . . . to empanel a jury that would, in theory, find against Appellant who was an African-American." Appellant's Brief at 12.[8]

By contrast, the Majority's detailed analysis of statistical information alone spans three pages of its opinion. In undertaking this analysis, it appears the Majority acted as Appellant's counsel articulating a cogent argument, complete with statistical information not even mentioned by Appellant. This is not our role. **See, e.g., Commonwealth v. Morales**, 80 A.3d 1177, 1179 (Pa. 2013) (*per curiam*) (citing **MacGregor v. Mediq, Inc.**, 576 A.2d 1123, 1128 (Pa. 1990) (improper for court to act as an advocate)); **see also Commonwealth v. Walls**, 391 A.2d 1064, 1066 (Pa. 1978) (Manderino, J., dissenting) (neither trial court not appellate court should act as advocate).

Further, the Majority, substituting its judgment for that of the trial court, finds that the Commonwealth's explanation for striking Juror 67 is "wholly unpersuasive," the third factor it cites as evidencing discriminatory intent. Majority Opinion at 19. If the explanation was credible, the Majority suggests, essentially there would be no jurors to select for jury duty because only a few (if any) want to sit on a jury. The trial court acknowledged that much, and the Majority eagerly noted it. **See id.** at 21-22. Thus, according to the Majority, while the trial court erroneously concluded the Commonwealth

---

[8] Although Appellant's argument on the **Batson** challenge covers slightly more than three pages of his brief, the argument consists merely of citations and quotations with analysis of the cited cases rather than argument supporting of a finding of discriminatory intent under the facts of this case.

did not engage in discriminatory conduct, the trial court was correct in finding that people generally do not want to serve on a jury. Again, it is not our role to choose what to believe. Our role is to determine whether the credibility determination was clearly erroneous, not to make the credibility determination itself. I do note however, that the Majority, in finding discriminatory intent, dismisses all of the Commonwealth's observations regarding Juror 67's demeanor in light of the trial court inviting potential jurors to sit back and relax. Majority Opinion at 22. However, there is no indication or even any suggestion that all or other jurors were so blatantly bothered with being there as Juror 67.

This Court discussed and rejected a substantially similar **Batson** challenge to demeanor in **Commonwealth v. Jackson**, 562 A.2d 338 (Pa. Super. 1989) (*en banc*), a case I find instructive with respect to Juror 67. In **Jackson**, the following exchange took place between the prosecutor and the trial court:

> **Prosecutor:** I exercised a peremptory challenge on one person who, it was basically what you would call body language. I can recall it was individual questioning of the jurors. They would come and sit in the jury box[.] I believe he had dark glasses on, and he was kind of sitting with his arm draped over, and I just got very negative feelings during my questioning of this individual. And even during [defense counsel's] questioning of him. Call it body language, if you will.
>
> **Trial Court:** You are indicating, for the record, you are slumped to the left side with your arm draped over the railing of the witness-box.
>
> **Prosecutor:** Correct.

*Id.* at 351.

The trial court accepted the prosecution's explanation as race neutral. This Court did not disturb that ruling on appeal. In announcing the judgment of the Court, Judge Beck explained:

> Appellant contends that a prosecutor's impression of a prospective juror's demeanor is not a proper reason for exercising a peremptory challenge. We do not agree. The manner in which a venireperson dresses, his facial expressions, his tone of voice, and his posture all provide relevant information concerning his attitude toward the court system and his ability to serve as a fair and impartial juror. Both district attorneys and defense counsel routinely base their trial selection strategy in part on such physical cues. In this case, the prosecutor noted for the record those aspects of [the juror's] conduct which called into question his willingness to be serious and attentive throughout the trial. We find that the prosecutor's explanation for striking [the juror] was legally sufficient. *Cf. United States v. Garrison,,* 849 F.2d 103, 106 (4th Cir. 1988), *cert. denied,* 488 U.S. 996, 109 S.Ct. 566, 102 L.Ed.2d 591 (1988) (prosecutor may strike individual perceived as inattentive); *United States v. Forbes*, 816 F.2d 1006, 1009 (5th Cir. 1987) (prosecutor may strike individual perceived as hostile).
>
> We recognize that a reference to a prospective juror's "body language" may mask a decision to exercise a peremptory challenge solely on the basis of race. A trial judge should not uncritically accept this or any other proffered explanation for a peremptory challenge. Instead, the judge should assess each proffered explanation in light of her independent recollection of the demeanor and responses of the venire panel members. As an appellate court, we must ordinarily defer to the trial court's evaluation since the trial judge had a direct opportunity to observe the voir dire process. Accordingly, we will accept the prosecutor's statement as an accurate summary of his reasons for striking this particular prospective juror.

*Id.* *See also Commonwealth v. Smulsky*, 609 A.2d 843, 846 (Pa. Super. 1992) (trial court did not abuse its discretion by denying objection

Commonwealth's peremptory exclusion of juror thought to be disingenuous and detached from the outside world).

The similarities between the demeanor descriptions in *Jackson* and here are striking. As Judge Beck aptly noted regarding the importance of demeanor in *Jackson*, dress, facial expressions, and posture all provide relevant information.[9] One must recognize that voir dire many times provides precious little time and opportunity for counsel to assess the whole of a potential juror. Counsel nonetheless must quickly arrive at an educated

_____

[9] Although I clearly acknowledge that the quoted excerpts from *Jackson* are from Judge Beck's opinion announcing the judgment of the Court, the Majority reiterates that *Jackson* is not binding on this Court. Majority Opinion at 23 n. 21. While I do not dispute the lack of binding authority, I maintain that *Jackson* is instructive and provides a proper framework for addressing the issue of juror demeanor as a basis for exercising peremptory strikes. Likewise, while also not binding on this Court, courts from other jurisdictions have employed a similar analysis. For example, in *Green v. Travis*, 414 F.3d 288 (2d Cir. 2005), the Second Circuit noted:

> [T]he unfavorable demeanor of a venireperson has been held to be a race-neutral explanation for a peremptory challenge. *See, e.g., McCrory v. Henderson*, 82 F.3d 1243, 1247-48 (2d Cir. 1996) (noting that peremptory challenges "may legitimately be based not only on answers given by the prospective juror to questions posed on *voir dire,* but also on the prosecutor's observations of the prospective juror"); *Brown v. Kelly*, 973 F.2d 116, 121 121 (2d Cir. 1992) ("An impression of the conduct and demeanor of a prospective juror during the *voir dire* may provide a legitimate basis for the exercise of a peremptory challenge."

*Id.* at 300. Similarly, the Fifth Circuit has routinely found demeanor to be a race-neutral justification. *See United States v. Thompson*, 735 F.3d 291, 297 n. 14 (5th Cir. 2013), and cases cited therein.

judgment as to each potential juror's ability to focus, understand, follow instructions, and act impartially and without bias when considering the evidence to be presented during trial. In this case, there were thirty potential jurors in the venire panel after group voir dire. While experts might spend countless hours studying selection factors, that luxury, except in rare cases, is not afforded counsel during the voir dire process. Therefore, small but significant clues that might provide insight into a potential juror take on heightened importance in jury selection. Demeanor may be an important clue providing insight into a potential juror. I believe the Commonwealth engaged in just such an exercise in assessing Juror 67, just as in ***Jackson***.[10]

---

[10] The Majority suggests that ***Jackson*** did not address the third step of ***Batson*** except with respect to vernirepersons challenged due to familiarity with the location of the crime. Majority Opinion at 25. The Majority's reading of ***Jackson*** intimates that both the trial court and this Court considered only that single aspect of the ***Batson*** challenge while leaving challenges based on demeanor unresolved. I respectfully disagree. Initially, the Court stated:

> If a defendant makes a prima facie showing of discrimination, the burden then shifts to the prosecution to justify his decision to strike minority jurors. "The prosecutor must therefore articulate a neutral explanation related to the particular case to be tried." ***Batson***, 476 U.S. at 98, 106 S.Ct. at 1724 (footnote omitted). **The trial judge must then make the ultimate determination of whether the defendant has established purposeful discrimination.** ***Id.***

***Jackson***, 562 A.2d at 544 (emphasis added). After conducting its analysis, the Court concluded by indicating:

> In summary, the trial judge found that appellant established a prima facie case of discrimination. This finding was not an abuse

In dismissing reliance upon **Jackson**, the Majority finds instructive, as binding precedent, the Supreme Court of the United States' decision in **Snyder v. Louisiana**, 552 U.S. 472 (2008), to emphasize the importance of the record demonstrating that the trial court in fact witnessed the alleged demeanor relied upon by a prosecutor to strike a juror, something it finds lacking in this case. Majority Opinion at p. 23-24. The Majority finds my argument therefore flawed, because I cite nothing in the record to indicate the trial court observed Juror 67 and found that this juror's demeanor credibly exhibited the basis for the strike attributed to her by the Commonwealth. **Id.** at 24. I certainly take no issue with the Majority pointing out any omission to acknowledge binding precedent, except in this instance, where the proposition for which the Majority cites **Snyder** was expressly rejected by the United States Supreme Court in **Thaler v. Haynes**, 559 U.S. 43 (2010) (*per curiam*). In **Thaler**, the Court dismissed the misconception that **Snyder** established that a judge must reject a demeanor-based explanation for a peremptory challenge unless the judge personally observed and recalled the aspect of the juror's demeanor on which the explanation was based. The Court stated:

_____

of discretion. **The trial judge also found that the Commonwealth rebutted this prima facie case of discrimination.** This finding was also not an abuse of discretion. Therefore, appellant's **Batson** challenge is not meritorious.

**Id.** at 354 (emphasis added).

This case presents the question whether any decision of this Court "clearly establishes" that a judge, in ruling on an objection to a peremptory challenge under **Batson v. Kentucky**, 476 U. S. 79 (1986), must reject a demeanor-based explanation for the challenge unless the judge personally observed and recalls the aspect of the prospective juror's demeanor on which the explanation is based. The Court of Appeals appears to have concluded that either **Batson** itself or **Snyder v. Louisiana**, 552 U. S. 472 (2008), clearly established such a rule, but the Court of Appeals read far too much into those decisions, and its holding, if allowed to stand, would have important implications. We therefore grant the petition for certiorari, grant respondent's motion to proceed *in forma pauperis*, and reverse the judgment of the Court of Appeals.

**Id.** at 44. Further:

In holding that respondent is entitled to a new trial, the Court of Appeals cited two decisions of this Court, **Batson and Snyder**, but neither of these cases held that a demeanor-based explanation for a peremptory challenge must be rejected unless the judge personally observed and recalls the relevant aspect of the prospective juror's demeanor.

The Court of Appeals appears to have concluded that **Batson** supports its decision because **Batson** requires a judge ruling on an objection to a peremptory challenge to " 'undertake "a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." ' " 561 F. 3d. at 540 (quoting **Batson**, 476 U. S. at 93, in turn quoting **Arlington Heights v. Metropolitan Housing Development Corp.**, 429 U. S. 252, 266 (1977)). This general requirement, however, did not clearly establish the rule on which the Court of Appeals' decision rests. **Batson** noted the need for a judge ruling on an objection to a peremptory challenge to "tak[e] into account all possible explanatory factors in the particular case," 476 U. S. at 95 (internal quotation marks omitted). **See also Miller-El v. Dretke**, 545 U. S. 231, 239 (2005); **Johnson v. California**, 545 U. S. 162, 170 (2005). Thus, where the explanation for a peremptory challenge is based on a prospective juror's demeanor, the judge should take into account, among other things, any observations of the juror that the judge was able to make during the *voir dire*. But **Batson** plainly did not go further and hold that a demeanor-based

explanation must be rejected if the judge did not observe or cannot recall the juror's demeanor.

Nor did we establish such a rule in **Snyder**. In that case, the judge who presided over the *voir dire* also ruled on the **Batson** objections, and thus we had no occasion to consider how **Batson** applies when different judges preside over these two stages of the jury selection process. **Snyder**, 552 U. S. at 475–478. The part of **Snyder** on which the Court of Appeals relied concerned a very different problem. The prosecutor in that case asserted that he had exercised a peremptory challenge for two reasons, one of which was based on demeanor (*i.e.*, that the juror had appeared to be nervous), and the trial judge overruled the **Batson** objection without explanation. 552 U. S. at 478–479. We concluded that the record refuted the explanation that was not based on demeanor and, in light of the particular circumstances of the case, we held that the peremptory challenge could not be sustained on the demeanor-based ground, which might not have figured in the trial judge's unexplained ruling. **Id.** at 479–486. Nothing in this analysis supports the blanket rule on which the decision below appears to rest.

The opinion in **Snyder** did note that when the explanation for a peremptory challenge "invoke[s] a juror's demeanor," the trial judge's "first hand observations" are of great importance. **Id.** at 477. And in explaining why we could not assume that the trial judge had credited the claim that the juror was nervous, we noted that, because the peremptory challenge was not exercised until some time after the juror was questioned, the trial judge might not have recalled the juror's demeanor. **Id.** at 479. These observations do not suggest that, in the absence of a personal recollection of the juror's demeanor, the judge could not have accepted the prosecutor's explanation. Indeed, **Snyder** quoted the observation in **Hernandez v. New York**, 500 U. S. 352, 365 (1991) (plurality opinion), that the best evidence of the intent of the attorney exercising a strike is often that attorney's demeanor. **See** 552 U. S. at 477.

**Id.** at 47-49 (footnote omitted).

Here, there is no suggestion that the trial judge in the case before us

was unable to make firsthand observations of the jurors' demeanors, and in

particular Juror 67, or the demeanor of the attorney exercising the peremptory strikes, bolstering the deference due the trial court's findings. The trial court was present for and actually conducted voir dire. Upon conclusion of the jury selection process, the trial court addressed Appellant's **Batson** challenges and determined the Commonwealth presented race neutral reasons for exercising those strikes. N.T., Voir Dire Proceedings, 10/28/14, at 90-94. There is nothing in the record to suggest that the trial court did *not* have the opportunity to observe Juror 67. Importantly, as reflected in the above excerpt, **Thaler** clarified that it is not imperative that the trial judge personally observe and recall the juror's demeanor in order to accept the prosecutor's explanation.

Given the record and our standard of review, I conclude that Appellant failed to meet his burden of proving the Commonwealth engaged in purposeful discrimination in striking Juror 67. Further, recognizing the trial court had the opportunity to observe the voir dire process whereas we are limited to a review of a cold record, and further recognizing the deference due the trial court's evaluation, I find no basis for disturbing the trial court's denial of Appellant's **Batson** challenge. Therefore, I dissent.